IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| TYRONE MCINTYRE, | ) | |
| | ) | |
| Petitioner; | ) | |
| | ) | |
| vs. | ) | 7:12-cv-08017-LSC-RRA |
| | ) | 09-cr-0174-LSC-RRA |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM OF OPINION**

Before the Court is Petitioner Tyrone McIntyre's ("McIntyre") motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, filed on April 26, 2012. (Cv. Doc. 1.) McIntyre challenges the validity of his guilty plea, arguing that it was a product of ineffective assistance of counsel. He seeks an evidentiary hearing to further his claims. The government has responded to McIntyre's § 2255 motion and McIntyre has replied. Accordingly, the motion is ripe for disposition. For the reasons stated below, McIntyre's § 2255 motion is due to be denied.

I.   FACTS AND PROCEDURAL HISTORY

In June of 2009, McIntyre was arrested for drug trafficking following the execution of a search warrant for two mobile homes located on the same property in Epes, Alabama. The search warrant was obtained as a result of an undercover investigation, during which confidential informants were able to purchase "crack" cocaine multiple times from McIntyre's home and the neighboring trailer. On July 29, 2009, McIntyre was charged in a superceding indictment with possession with intent to distribute five grams or more of a mixture or substance containing cocaine base, commonly known as "crack" cocaine, under 21 U.S.C. § 841(a)(1) and (b)(1)(B), as well as conspiracy to possess and intent to distribute 50 grams or more of the same. McIntyre was also charged with three other counts of actual distribution under 21 U.S.C. § 841(a) and (b).

McIntyre turned down an early offer of a plea agreement and indicated that he intended to go to trial. One week before McIntyre's scheduled trial, his court-appointed counsel attempted to withdraw. At the motion to withdraw hearing, counsel stated that McIntyre had been unwilling to assist her in preparing his defense. Specifically, McIntyre's counsel stressed that McIntyre would frequently skip planned meetings, was unwilling to provide names of potential witnesses, and on one occasion

even refused to turn off the television so he and counsel could discuss his case. (*See generally* Doc. 15-2.) The motion to withdraw was denied.

On October 5, 2009, McIntyre changed his plea to guilty. With assistance from his counsel, McIntyre reviewed and signed a Guilty Plea Advice of Rights Certification Form. A Rule 11 plea colloquy was held, during which McIntyre answered under oath questions concerning whether his plea was knowing and voluntary. McIntyre was eventually sentenced to a term of 292 months. On April 7, 2010, McIntyre filed a notice of appeal, arguing that the Fair Sentencing Act of 2010 should result in his sentence being reconsidered. The Eleventh Circuit dismissed his appeal as moot on February 11, 2011. McIntyre did not seek certiori to the Supreme Court.

## II. Discussion

### A. Timeliness and Non-Successive Nature of McIntyre's § 2255 Petition

The Eleventh Circuit ruled on McIntyre's direct appeal on February 11, 2011. McIntyre filed his § 2255 petition on April 26, 2012. Taking into account the ninety days the Supreme Court gives litigants to petition for certiori, *see* Sup. Ct. R. 13.3, McIntyre had until approximately May 11, 2012 to file his petition. Thus, McIntyre's § 2255 petition was filed in a timely manner. This is McIntyre's first § 2255 petition,

thus ensuring that it is not successive. *See* 28 U.S.C. § 2255(h) (limiting when additional habeas petitions may be filed).

### B.     Merits of McIntyre's § 2255 Petition

McIntyre essentially asserts four grounds for relief, all based on alleged ineffective assistance of counsel:

1. Counsel forced McIntyre to reject an early plea deal by misrepresenting the strength of her case and threatening to withdraw should McIntyre take the deal;
2. Counsel misrepresented the existence of a plea agreement that would guarantee McIntyre would receive a sentence of no more than ten years should he plead guilty;
3. Counsel failed to file a meritorious motion to suppress evidence obtained as a result of the search warrant; and
4. Appellate counsel was rendered ineffective when it "failed to raise [McIntyre's] right to conflict-free counsel" at the district court level.[1]

To establish an ineffective assistance of counsel claim, a petitioner must show (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance actually prejudiced the petitioner. *See Strickland v. Washington* 466 U.S. 668, 687–88 (1984). There is a presumption that counsel's conduct is "competent" under the Sixth Amendment. *See id*. at 689. To

---

[1] McIntyre asserted the first three grounds in his original petition, while the fourth ground was raised in a motion to amend. McIntyre submits several affidavits supporting his allegations against trial counsel. All of McIntyre's supporting affidavits are identically phrased. Only the signatures differ. *See* Cv. Doc. 3, at 29–41. McIntyre also filed a traverse clarifying his arguments concerning trial counsel's failure to file a motion to suppress.

meet the deficient performance prong of *Strickland*, the petitioner must show that counsel's performance fell outside the "wide range" of professional assistance deemed adequate. *See id*. The "prejudice" prong asks whether there is a reasonable probability that the outcome of the relevant proceeding would have been different had counsel's performance not been deficient. *See id*. at 694. When addressing ineffective assistance of counsel claims brought by defendants alleging that ineffective assistance led to a mistaken guilty plea, the relevant question for the "prejudice" prong is whether there is a reasonable probability that, but for counsel's alleged deficient performance, the defendant would have elected to go to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).[2]

### 1. *Rejection of an Early Plea Deal*

McIntyre argues a violation of his right to constitutionally adequate counsel, and bases the claim on allegations that his attorney initially misrepresented the strength of her case, thereby convincing McIntyre to reject an early plea deal. McIntyre further claims that his attorney threatened to withdraw should McIntyre take the deal, and actually attempted to do so as a result of the disagreement.

---

[2] The first prong of the *Strickland* approach remains unchanged under *Hill*. *See id*. at 62 (White, J. and Stevens, J., concurring) (stating that, under the first prong of *Hill*, a court should ask whether the attorney's performance fell within "'the wide range of professionally competent assistance' demanded by the Sixth Amendment" (quoting *Strickland*, 466 U.S. at 690)).

While a petitioner is usually entitled to an evidentiary hearing if he can allege facts that, if true, would entitle him to relief, no such hearing is required when the record contradicts petitioner's allegations. *See Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984) (stating that an evidentiary hearing is not required "where the petitioner's allegations are affirmatively contradicted by the record"). The allegations supporting McIntyre's ineffective assistance of counsel claim are contradicted by the record. While McIntyre claims that his attorney attempted to withdraw due to a disagreement over whether McIntyre should accept an early plea deal, the transcript of the motion to withdraw hearing refutes this assertion. The transcript shows that counsel's withdrawal attempt was motivated not by a disagreement over whether to accept a plea bargain, but instead over McIntyre's unwillingness to assist his attorney in preparing a defense. *See* Cr. Doc. 15-2. At the hearing, McIntyre's attorney detailed his unwillingness to assist her in preparing a defense. She noted that McIntyre refused to attend scheduled meetings, would not provide her with the names of potential witnesses, and generally refused to answer questions. On one occasion, McIntyre's trial counsel drove to meet McIntyre at his home (as he routinely failed to appear at scheduled meetings), only to have McIntyre refuse to turn off the television to discuss his case.

McIntyre did not earnestly dispute the truthfulness of these allegations at the motion to withdraw hearing. Instead he said that "I come to see [my attorney] when I can," and that it was "up to [a potential witness] whether she wants to talk to [my counsel]." *See id*. at 4, 11. Finally, when the magistrate judge emphasized that it was in McIntyre's best interest to be more cooperative with counsel, McIntyre stated that "if [my attorney] doesn't want to represent me no more, that's fine." *Id*. at 13. Since the hearing established the reason for the attempted withdrawal—and McIntyre did not disagree with that reason at the hearing—he may not now argue that his attorney actually attempted to withdraw in an effort to force McIntyre to turn down a plea agreement. Such an argument is in direct conflict with the record.

Furthermore, McIntyre fails to show that his counsel's actions concerning the early offer for a plea agreement fell outside the "wide range of professional competence" afforded to counsel under the Sixth Amendment. *See Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Strickland*, 466 U.S. at 690). McIntyre alleges merely that his attorney was optimistic about the chances at trial and therefore advised McIntyre to reject the early plea agreement. McIntyre does not allege that counsel based that opinion on an erroneous view of the law, nor does he provide any other facts suggesting that counsel's actions fail to meet the highly deferential

standard under *Strickland*. *Cf. Lafler v. Cooper* 132 S. Ct. 1376 (2012) (noting that the parties had stipulated that counsel's advice to reject a guilty plea was objectively unreasonable when counsel based the advice on a clearly erroneous view of the law, but adding that a mere "erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance"); *Frank v. United States*, 552 F. App'x 779, 781 (11th Cir. 2013) (affirming a district court's decision that counsel's actions in advising defendant to reject a plea offer and proceed to trial was insufficient to establish deficient performance).

### 2. *Misrepresentation that McIntyre Would Receive No More Than Ten Years if He Pled Guilty.*

McIntyre also bases an ineffective assistance of counsel claim on an allegation that his counsel misrepresented that McIntyre would receive a sentence of no more than ten years if he pled guilty. McIntyre goes even further with his allegations, claiming that his counsel lied to him about the existence of a plea agreement.

However, again McIntyre's allegations contradict the record, and thus an evidentiary hearing is not required. *See Vick*, 730 F.2d at 708. A plea colloquy was held during which McIntyre answered affirmatively when asked whether he understood that there was no plea agreement in place:

> **THE COURT:** Anybody offered you any reward or hope for reward for pleading guilty?
> **MCINTYRE:** No, sir.
> **THE COURT:** Do you understand that there is no plea agreement whatsoever with regard to your guilty plea?
> **MCINTYRE:** Sir?
> **THE COURT:** Do you understand that there is no plea agreement whatsoever with regard to your guilty plea? There is no agreement; do you understand that?
> **MCINTYRE:** Yes, sir.

*Id.* at 28 (emphasis added). McIntyre also stated that he understood that his guideline sentencing range, while limited by the statutory range, would remain uncertain until the actual sentencing hearing:

> **THE COURT:** Now, I assume that your attorneys have told you what they anticipate the sentencing guideline range to be. Have they done that? Has [your attorney] done that?
> **MCINTYRE**: Yes, sir.
> **THE COURT**: I want to make sure that you understand the guideline range is advisory. It's to help me determine an appropriate sentence to give you. We take a book, the Sentencing Guidelines manual, looks kind of like this, we put all the details of your case in there and your characteristics and it comes up with a range. It's within the statutory range. *But nobody can tell you exactly what that range will end up being until we have a sentencing hearing and I rule on objections and what-not to the sentencing report.*
> They may be absolutely correct, they may have contacted the probation office to get assistance in determining what the range will be. *But I want you to understand, nobody, including me, can tell you exactly what it will end up being until we have a sentencing hearing.* Do you understand me?
> **MCINTYRE:** Yes, sir.

Cr. Doc. 96, at 17 (emphasis added).

Finally, McIntyre also stated that he understood that he potentially faced up to forty years in prison:

> **THE COURT:** Okay, so . . . [the] guideline range is advisory. I am not bound by it. I have to consider it, but I am not bound by it. Do you understand that?
> **MCINTYRE:** Yes, sir.
> **THE COURT:** Ok, the statutory range is binding; it's binding upon us all, and I am going to give you the statutory range of punishment you are facing in each one of these counts.
> . . . .
> **THE COURT:** With regards to counts three and count—count three and count five—you are subject to a fine of not more than two million dollars; *in-custody imprisonment not less than five years and not more than 40 years* . . . . Do you understand the statutory range of punishment that you are facing with regard to those two counts?
> **MCINTYRE:** Yes, sir.

*Id.* at 18, 20 (emphasis added).

There is a "strong presumption" that any statement made during a Rule 11 guilty plea colloquy is truthful. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). While under oath at his plea colloquy, McIntyre stated that he understood that there was no plea agreement in place, that he faced up to forty years in prison, that no one (including counsel) could tell McIntyre what his sentence would be until after the sentencing hearing. McIntyre may not now make allegations that refute these statements made during the plea hearing. *See, e.g.*, *Johnson v. United States*, No. 8:07-cv-594-t-27-MSS, 2009 WL 995472, at *6 (M.D. Fla. Apr. 13, 2009) ("Where . . . the

transcripts of Petitioner's guilty plea hearing and sentencing hearing refute his contentions that he was misled about the penalties he faced if convicted, an evidentiary hearing is unnecessary, as 'the files and records make manifest the lack of merit' of the § 2255 claim.'" (quoting *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984))).

In addition, McIntyre's contention that he was instructed by counsel to answer "yes" and "no" to certain questions during the colloquy does not by itself suggest that the answers were false. Rather, such an assertion suggests only that counsel wished McIntyre to give direct, non-elaborate answers to the Court during the colloquy. The Certification Form on record—as well as the detailed questions of the Court during the actual colloquy—contradict McIntyre's assertion that his answers were uninformed recitations forced upon him by his attorneys.

### 3. *Failure to File a Motion to Suppress*

McIntyre also argues that his attorney was ineffective because she failed to file what would have been a meritorious motion to suppress evidence obtained as a result of a search warrant. However, there is no basis to conclude that McIntyre's attorney's failure to file a motion to suppress fell outside the "wide range of professional competence" afforded to counsel. *Jones*, 436 F.3d at 1293 (citing *Strickland*, 466 U.S.

at 690).

Counsel stated that she researched the warrant and concluded that there was no viable basis to challenge its validity. While McIntyre argues that the same drug buys were used to establish probable cause for the search of both trailers on the shared piece of property, the record indicates that law enforcement officers surveilled drug purchases made from both mobile homes. *See* Cv. Doc. 15-3, at 9. Furthermore, even if drug purchases were witnessed outside only one of the two mobile homes, alternative evidence would have nonetheless established probable cause, such as the prolonged surveillance of McIntyre's frequent trips between the two trailers, the trailers' close proximity to one another, the informant-derived tips, and law enforcement officers' personal experiences. *See United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (stating that "[p]robable cause exists when under the totality-of-the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place" (internal quotations omitted)); *see also Franks v. Delaware*, 438 U.S. 154, 171–72 (1978) (stating that even deliberately false statements in an affidavit will not affect the validity of a warrant if those statements were not material to the determination of probable cause). McIntyre's attorney states that she chose not to file a motion to suppress because any such motion would fail. *See* Doc.

15-1, at 2. This Court can find no reason to disagree with her assessment, and thus will not second-guess her decision not to file a motion to suppress. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (stating that, for a petitioner to successfully argue an ineffective assistance claim, he must "establish that no competent counsel would have taken the action that counsel did take").[3]

Furthermore, even assuming that counsel's performance did fall below the highly deferential standard under *Strickland*, McIntyre has not sufficiently alleged how counsel's ineffective performance affected his decision to plead guilty. While McIntyre states that if he "would have known that there was no valid search warrant . . . [he] would not have pled guilty" (*see* Cv. Doc. 3, at 17), such an allegation is conclusory and dependent upon the warrant being invalid. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner is not entitled to relief under an ineffective assistance claim when "his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly

---

[3] McIntyre also claims that his counsel did not even discuss the warrant with him before the guilty plea, while counsel states that she and McIntyre reviewed the warrant together. *See* Doc. 15-1, at 2. While the Court may not take counsel's word over McIntyre's based solely on the fact that she is an officer of the Court, there is evidence on record to support counsel's claim. Though the warrant itself is not mentioned, the record indicates that counsel had numerous discussions with McIntyre concerning how to proceed in his case. As noted at the motion to withdraw hearing, these discussions were often held despite McIntyre's refusal to fully cooperate with his attorney's investigation. Also, there is nothing to support a conclusion that a motion to suppress would have been successful if filed.

incredible'" (quoting *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990))); *see also Johnson v. United States*, No. CV411-134, 2011 WL 3320565, at *2 (S.D. Ga. Aug. 1, 2011) (stating that "[c]ounsel's refusal to file a doomed suppression motion can hardly give rise to any untoward pressure to plea," and thus concluding that the petitioner failed to demonstrate prejudice to the extent that the knowing and voluntary nature of the plea could be called into question). Counsel's decision not to pursue a sure-to-fail motion to suppress could not have realistically affected McIntyre's decision to plead guilty.

### 4. *Appellate Counsel's Failure to Pursue an Ineffective Assistance Claim Based on Trial Counsel's Actions*

Lastly, McIntyre argues that his appellate counsel's performance was rendered constitutionally inadequate when appellate counsel failed to raise an ineffective assistance of counsel claim concerning trial counsel's performance. Specifically, McIntyre argues that the effectiveness of his trial counsel was compromised by various communication issues, *see supra* pg. 2, para. 2, and that his appellate counsel was rendered ineffective when it "failed to raise [McIntyre's] right to conflict-free counsel" at the district court level.

However, appellate counsel's decision not to pursue an ineffective assistance claim cannot be considered objectively unreasonable. The Eleventh Circuit has stated

that ineffective assistance claims typically should not be raised on direct appeal, since there is not yet a sufficient record developed to evaluate counsel's performance. *See United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) (stating that "[w]e will generally not consider claims of ineffective assistance of counsel on direct appeal where the district court did not entertain the claim or develop a factual record" (internal quotations omitted)); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) (also stating that ineffective assistance should usually be brought only as part of a motion for collateral review).

Appellate counsel cannot be considered deficient for not bringing an argument that the Court of Appeals would almost certainly have refused to consider. Also, McIntyre suffered no prejudice as a result of appellate counsel's failure to raise an infective assistance claim, since McIntyre still had the opportunity to bring such claims during the current habeas proceedings.[4]

---

[4] Also, the Court notes that McIntyre is essentially trying to use his own unwillingness to assist trial counsel as a basis for this ineffective assistance claim. McIntyre uses his trial counsel's statements at the motion to withdraw hearing as the basis for this claim. At the hearing, trial counsel expressed concern that McIntyre's uncooperativeness was compromising counsel's ability to be an effective advocate. McIntyre now argues that his appellate counsel was ineffective for not alleging deficient performance on the part of McIntyre's trial counsel. As the magistrate judge noted during the motion to withdraw hearing, all indications are that trial counsel "desperately want[ed] to help" McIntyre in his defense, and that she often did so despite McIntyre's willingness to cooperate. McIntyre cannot impede his trial counsel's efforts to mount a defense, then claim that counsel was ineffective because she expressed concern about McIntyre's uncooperativeness.

## III. Conclusion

This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurist would find the district court's assessment of the constitutional claims debatable and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). This Court finds Petitioner's claims do not satisfy either standard.

For the foregoing reasons, McIntyre's § 2255 motion to vacate, set aside, or correct a sentence is due to be denied and this case dismissed with prejudice. The request for an evidentiary hearing is rendered moot.

A separate Order will be entered consistent with this Opinion.

Done this 13th day of November 2014.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177822